IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK A. JACKSON | : | |
| | : | CIVIL ACTION |
| v. | : | No. 24-6079 |
| | : | |
| SCOTT BESSENT, | : | |
| *SECRETARY OF THE U.S.* | : | |
| *DEPARTMENT OF THE TREASURY* | : | |

| | |
|---|---|
| McHUGH, J. | April 16, 2025 |

## MEMORANDUM

In this *pro se* civil action, Plaintiff Mark Jackson seeks to enforce agency compliance with a favorable administrative decision rendered by the EEOC in 2023. Plaintiff also advances claims under Title VII, alleging discrimination and retaliation based on race and some unspecified disability. Defendant has moved to dismiss on procedural grounds. Defendant's motion will be granted in part and denied in part.

**I.     Relevant Background**

In July 2012, Plaintiff received a conditional offer of employment for a position as a GS-11 Internal Revenue Agent with the IRS. The offer was conditioned on successful completion of a background check, including a Declaration for Federal Employment (OF-306). When the background check revealed pending criminal charges, the IRS rescinded Plaintiff's offer.[1]

In February 2014, Plaintiff filed an EEO complaint ("IRS-14-0027") alleging that the IRS subjected him to discrimination on the basis of race, disability, and age[2] when the Agency

---

[1] On May 19, 2014, all charges were dismissed and expunged. ECF 15-3 at 2.

[2] Plaintiff has since withdrawn his age claim. ECF 15-1 at 7 n.4.

withdrew his job offer.³  In July 2019, an EEOC Administrative Judge (AJ) concluded that Plaintiff had established a prima facie case of disparate treatment, and that the Agency's policy of rescinding job offers to applicants with pending criminal matters had a disparate impact on African American applicants.⁴  ECF 15-1 at 19-22.  The IRS appealed the judgment to the EEOC's Office of Federal Operations (OFO).

On January 31, 2023, OFO modified the AJ's ruling.  With respect to the disparate impact claim, OFO concluded that Plaintiff had not set forth sufficient statistical disparities to establish a prima facie case.  ECF 15-3 at 9-10.  But as to the disparate treatment claim, OFO noted that the Agency had in fact hired applicants with pending criminal charges and that its "proffered reasons for rescinding [Plaintiff's] condition[al] job offer were pretext for discrimination."  *Id.* at 12.  OFO issued an order requiring the IRS to, among other remedial actions, reinstate Plaintiff with a retroactive start date of August 27, 2012, issue backpay, and investigate whether Plaintiff was entitled to compensatory damages.⁵  *Id.* at 12-14.  The IRS moved for reconsideration of OFO's disparate treatment finding, but that request was denied on August 15, 2023.  ECF 15-4.  To date, Plaintiff has received $226,153.63 in backpay.  Am. Compl. ¶ 155, ECF 10.  On October 18, 2023,

---

³ An EEO Complaint is an administrative complaint filed in the Equal Employment Opportunity Commission (EEOC).  Prior to filing IRS-14-0027, Plaintiff filed an appeal of his recission with the Merit Systems Protection Board.  The Board dismissed Plaintiff's petition for lack of jurisdiction.  ECF 15-2 at 1.  *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

⁴ The AJ also entered a default judgment in Plaintiff's favor as a sanction for the Agency's failure to comply with discovery orders.  ECF 15-1 at 16-19.  The default judgment was reversed on appeal.  ECF 15-3 at 7-9.

⁵ On November 5, 2023, Plaintiff filed a claim for $300,000 in compensatory damages, the maximum amount provided by statute.  *See* 42 U.S.C. § 1981a(b)(3)(D); Am. Compl. ¶¶ 34, 44.  On March 7, 2024, Plaintiff was awarded $50,000 in compensatory damages.  *Id.* ¶¶ 57 n.7, 58, 125; *see also* ECF 15 at 4 n.3.  Plaintiff's April 2024 appeal of the award remains pending before OFO.  ECF 15 at 4 n.3.  The Court has not been provided with documentation of certain administrative decisions and must therefore rely on the parties' representations.

the IRS filed a motion for clarification of OFO's August 2023 decision. The Agency was concerned that Plaintiff had not mitigated his damages between August 27, 2012 and December 31, 2017. ECF 15 at 4 n.3. That motion remains pending before OFO.

On October 23, 2023, Plaintiff reported to work. Am. Compl. ¶ 43. Soon thereafter, the IRS directed Plaintiff to complete an updated OF-306 as part of a renewed background investigation. *Id.* ¶¶ 36, 51, 59, 61. Plaintiff refused, contending that OFO's August 2023 decision required his unconditional reinstatement, rendering him exempt from any further background checks.[6] *Id.* ¶¶ 32, 33, 37, 46, 47, 51, 55. Plaintiff's refusal to submit to a renewed background investigation has resulted in a series of professional consequences, including (1) the withholding of his pocket commission,[7] (2) the issuance of a Letter of Admonishment and subsequent Letter of Reprimand, and (3) a proposed 14-day suspension.[8] *Id.* ¶¶ 33, 68, 134, 139.

Following twelve years of administrative jousting, Plaintiff commenced the present lawsuit in a Complaint that spans 205 paragraphs, incorporates 99 exhibits, and totals over 500 pages. Notwithstanding the sprawling nature of his filings, Plaintiff's legal claims fall largely into two categories. First, Plaintiff seeks enforcement of OFO's August 2023 decision, with a specific focus on securing additional backpay. *Id.* ¶¶ 152-156. Second, Plaintiff brings Title VII claims for disparate treatment, hostile work environment, and retaliation. *Id.* ¶¶ 157-205.

---

[6] In a filing prior to the Rule 16 conference, Defendant states that, on October 3, 2023, the Agency sought clarification from the Office of Personnel Management (OPM) as to whether Plaintiff was required to undergo a background investigation – and that OPM confirmed that Plaintiff was indeed required to undergo renewed screening. ECF 11 at 3. Defendant has not yet submitted documentation of these communications.

[7] A pocket commission is a form of identification for IRS agents. As Plaintiff puts it, "[a] Revenue Agent without a pocket commission is like a police officer or other law enforcement official with[out] his/her badge or gun." Am. Compl. ¶ 47.

[8] On April 2, 2025, Plaintiff was suspended for 14 days for "failure to follow management directives or instructions." The Court learned of his suspension via an April 3 email from Plaintiff, which included as an attachment the Agency's Decision Letter. The letter is now docketed at ECF 18.

**II.     Standard of Review**

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

**III.    Discussion**

    **A. Plaintiff's civil enforcement action is premature because he has not obtained an EEOC determination of agency noncompliance as required by 29 C.F.R. § 1614.503(g).**

Plaintiff seeks to enforce OFO's August 2023 Order requiring the IRS to furnish backpay, asserting that he is entitled to $755,565.94 but that the IRS has paid just $226,153.63.  Am. Compl. ¶¶ 154-55.  I conclude that Plaintiff's civil enforcement action is premature under the plain language of 29 C.F.R. § 1614.503(g), which I read to require a complainant to obtain an EEOC determination of agency noncompliance prior to filing suit in federal court.

A federal employee who believes an agency is not complying with an OFO decision may file a petition for enforcement with the EEOC.  29 C.F.R. § 1614.503(a).  If the EEOC determines that "an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision."  29 C.F.R. § 1614.503(g).

Numerous courts have held that Section 1614.503(g) establishes the prerequisites for filing a civil enforcement action in federal court, with the result that a plaintiff may only file a civil enforcement action if (1) the EEOC issues a finding of noncompliance with a prior decision, or (2) the agency has failed to submit a required report of compliance.  *See Malek v. Leavitt*, 437 F.Supp.2d 517, 524 (D. Md. 2006) ("an employee may pursue an enforcement claim in federal court if the EEOC has made a prior determination that the agency is not in compliance with the EEOC's earlier Order or if the agency has failed to file a required compliance report"); *Robinson*

*v. Geithner*, No. 11-913, 2012 WL 1600020, at *5 (S.D. Tex. May 7, 2012) ("Courts have found that, under 29 C.F.R. § 1614.503(g), the prerequisites to filing a suit for enforcement are that (1) the Commission has determined that an agency is not complying with a prior decision, or (2) the agency has failed or refused to submit any required report of compliance. The Court agrees."); *Clemente v. Holder*, No. 11-897, 2011 WL 5548959, at *5 (E.D. Va. Nov. 15, 2011) ("Failure to meet either of [§ 1614.503(g)'s] prerequisites precludes a plaintiff from seeking enforcement of an OFO order in federal district court"); *Semper v. Yellen*, No. 22-70, 2024 WL 5416167, at *5 (D. Utah Dec. 6, 2024) ("Plaintiff's failure to receive a final decision from the EEOC regarding the IRS's noncompliance with the [Final Agency Decision] was a prerequisite to filing her claim in federal court and she therefore failed to exhaust her administrative remedies"), *report and recommendation adopted*, 2025 WL 552587 (D. Utah Feb. 19, 2025); *Tshudy v. Potter*, 350 F.Supp.2d 901, 906 (D.N.M. 2004) ("In order for this Court to have jurisdiction over Plaintiff's enforcement action, there must have been an EEOC determination of non-compliance"); *Adcock v. Roche*, No. 4-208, 2006 WL 1285045, at *6 (M.D. Ga. May 5, 2006) ("As is indicated by the plain terms of subsection (g), an employee's claim for judicial enforcement is proper only where the EEOC determines that the agency is not in compliance with its previous decision, or where the agency has failed to submit a compliance report"); *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003) (dicta) ("Obviously, if [plaintiff's] action constituted an enforcement action, the lack of an EEOC determination of non-compliance, which is a prerequisite to such a suit, would have rendered the grant of summary judgment in favor of defendant appropriate on that ground").

    To his credit, Plaintiff does not attempt to wave away the text of Section 1614.503(g). Instead, he points to language in OFO's August 2023 order providing that he "has the right to file a civil action to enforce compliance with the Commission's order *prior to* or following an

administrative petition for enforcement." ECF 15-4 at 5 (emphasis added); *see also* OFO Jan. 31, 2023 Order, ECF 15-3 at 15 (same); Am. Compl. ¶ 6.  Plaintiff contends that the OFO language supersedes the text of the governing regulation and permits judicial review prior to an EEOC determination of agency noncompliance.

A few courts have been receptive to Plaintiff's argument.  *See*, *e.g.*, *Rajendran v. Wormuth*, No. 22-581, 2023 WL 2666695, at *10-11 (W.D. Pa. Mar. 28, 2023) (noting that, while several courts have concluded that an EEOC determination of noncompliance is a prerequisite to bringing a civil enforcement action, there is a "lack of clarity" on the issue particularly in light of the contradictory OFO language); *Farrington v. Johnson*, 206 F.Supp.3d 634, 641-42 (D.D.C. 2016) (acknowledging that the text of § 1614.503(g) supports the proposition that an EEOC determination of noncompliance is a prerequisite to pursuing a civil enforcement action but nonetheless denying the agency's motion to dismiss in part due to the contradictory OFO language).[9]

The language in the OFO order cites 1614.503(g) as authority.  ECF 15-4 at 5.  But the regulation explicitly requires a finding of agency noncompliance as a prerequisite to suit, and nothing in the regulation states or can be read to imply that suit is authorized in the absence of such a finding.  The text of the governing regulation must prevail.  I therefore hold that Section 1614.503(g) requires a complainant to obtain an EEOC determination of agency noncompliance prior to filing suit in federal court.  OFO's citation to the regulation is an anomaly and would render the regulation meaningless.  *See Murchison v. Astrue*, 689 F.Supp.2d 781, 787 (D. Md. 2010) (characterizing the contradictory OFO language as "boilerplate"), *rev'd on other grounds*,

---

[9] *Farrington* provides relatively weak support for Plaintiff's position because the court emphasized that FEMA had not raised this procedural deficit, which the court went on to describe as raising a "substantial question." 206 F.Supp.3d at 641-42.

466 F.App'x 225 (4th Cir. 2012);[10] *Robinson*, 2012 WL 1600020, at *5 n.4.  Finally, for purposes of this action, OFO's most recent ruling in this matter, issued February 18, 2025, explicitly provides that Plaintiff must file a petition for enforcement with the EEOC prior to bringing an action in federal court.  *See* ECF 15-7 at 3 ("Complainant must challenge the Agency's alleged failure to implement the Commission's [August 2023] order [] *by filing a petition for enforcement with the EEOC*") (emphasis added).

Here, Plaintiff has not satisfied Section 1614.503(g)'s prerequisites.  As an initial matter, Plaintiff has not filed a petition for enforcement with the EEOC, so the Commission has not had an opportunity to assess agency compliance.  Moreover, Plaintiff does not sufficiently allege that the IRS has failed or refused to submit a compliance report.  Following Plaintiff's request for copies of a compliance report on January 11, 2024, an EEOC official responded that the Commission would "look into this matter and follow up."  Am. Compl. ¶ 48; Ex. 28-29.  Two weeks later, the official advised Plaintiff that she had "submitted an inquiry to the bureau regarding documentation needed to report on compliance for your case."  *Id.* ¶ 50; Ex. 34.  The scattershot nature of Plaintiff's filings makes it difficult for the Court to determine whether the IRS failed to submit a compliance report.  Regardless, Plaintiff does not allege that the Commission "notif[ied] [him] of the right to file a civil action for enforcement of the decision."  29 C.F.R. § 1614.503(g).  Because Plaintiff has not obtained an EEOC determination of agency noncompliance and has not sufficiently pled that the IRS improperly withheld a compliance report, Plaintiff's civil enforcement action is premature.

---

[10] The Fourth Circuit's decision in *Murchison* is an unpublished, nonprecedential decision, but the Fourth Circuit's Rules provide that it may be cited.  *See* Fourth Circuit Rule 32.1(a).

Additionally, even if Plaintiff could meet the Section 1614.503(g) prerequisites, this action is premature for a separate reason. On October 18, 2023, the IRS filed a motion for clarification of OFO's August 2023 backpay order in light of the Agency's concern that Plaintiff had not mitigated his damages between August 27, 2012 and December 31, 2017. ECF 15 at 4 n.3. That motion remains pending before OFO. Plaintiff cannot seek enforcement of an order that is not yet final.

### B. Plaintiff's Title VII claims may proceed.

Over the past year, due to Plaintiff's refusal to undergo a renewed background check, the IRS has imposed a series of consequences, each of which Plaintiff construes as evidence of further retaliation. In response, Plaintiff has filed two formal administrative complaints – IRS-24-900 and IRS-24-1300. The allegations set forth in these complaints form the core of Plaintiff's Title VII claims.[11]

On July 11, 2024, Plaintiff filed administrative charge IRS-24-900,[12] alleging that the IRS subjected him to discrimination on the basis of race and disability, and in reprisal for protected

---

[11] Plaintiff also alleges that the IRS failed to properly process his application for an Appeals Officer position, Am. Compl. ¶¶ 49, 166(c), and submitted an "altered/doctored" version of his resume to the EEOC. *Id.* ¶ 55; Ex. 36 at 23. It is not clear whether these allegations were included in Plaintiff's administrative complaints.

[12] On May 29, 2024, prior to filing IRS-24-900, Plaintiff contacted an EEO Counselor pursuant to 29 C.F.R. § 1614.105(a). Am. Compl. ¶ 77. Under 29 C.F.R. § 1614.105(a)(1), "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." The multitudinous nature of this decade-long dispute renders it difficult to determine precisely when certain claims arise. Nonetheless, I am constrained to dismiss as untimely any claim that predates the 45-day window. 29 C.F.R. § 1614.107(a)(2) (providing for the dismissal of "an entire complaint that fails to comply with the applicable time limits contained in § 1614.105 [] unless the agency extends the time limits in accordance with § 1614.604(c), or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor").

The parties' briefing on this issue is puzzling. As for Plaintiff, he affirmatively pleads that he initiated contact with an EEO Counselor on May 29, 2024. *See* Am. Compl. ¶ 77 ("On May 29, 2024, Plaintiff properly/timely contacted an EEO counselor for purposes of filing the formal complaint in IRS-24-0900"). In his Response, however, Plaintiff attempts to recast the date of contact as November 5, 2023. ECF 16 at

activity, when the Agency (1) attempted to coerce him into completing an OF-306 as part of a renewed background check; and (2) issued a Letter of Admonishment after he declined to complete the OF-306. *See* ECF 15-7 at 2. Next, on October 24, 2024, Plaintiff filed administrative charge IRS-24-1300 following the Agency's issuance of the Letter of Reprimand as well as its purported attempt to impede his access to an "On the Job Instructor." *See* ECF 17-4 at 1-2. The two administrative complaints arise out of a common set of facts – the IRS's alleged retaliation in response to Plaintiff's refusal to undergo a renewed background investigation.

> *1. Plaintiff's Title VII claims arising out of IRS 24-900 are administratively exhausted under 29 C.F.R. § 1614.407(e) because his civil action was filed within 90 days of receipt of a final agency decision.*

42 U.S.C. § 2000e-16 and its corresponding regulations provide the "exclusive remedy for federal employees who allege discrimination in the workplace."[13] *Robinson v. Dalton*, 107 F.3d 1018, 1020-21 (3d Cir. 1997). A Title VII plaintiff must exhaust his administrative remedies prior to seeking judicial review. *Id.* at 1020. 29 C.F.R. § 1614.407 sets forth the governing framework under which a complainant may seek judicial review following the issuance of a final agency action. If a federal employee appeals a final agency decision to OFO, the employee may file a

---

18-21. But this date reflects when Plaintiff filed a declaration in support of a separate claim for compensatory damages. Defendant, on the other hand, correctly identifies May 29 as the date of initial contact with an EEO counselor, and properly contends that any allegations prior to the 45-day window are untimely. Then, however, Defendant miscalculates the 45-day cutoff as March 15. ECF 15 at 8 ("any allegations to support any of [Plaintiff's] claims prior to March 15, 2024, are untimely"). Mathematically, the cut-off date was April 14. Because Defendant's miscalculation would ultimately redound to Plaintiff's benefit, there is little question that this was an honest mistake. In subsequent filings, the Court will only consider claims that arise on or after April 14, 2024.

[13] The parties dispute whether 42 U.S.C. § 2000e-5 or 42 U.S.C. § 2000e-16 governs the proper procedure under which a federal employee may bring a civil action. This dispute is inconsequential – the two sections go hand in hand. Plaintiff is correct that Title VII applies to Federal Employees under § 2000e-16, but federal employees may file suit pursuant to § 2000e-5. *See* 42 U.S.C. § 2000e-16(c); *Bullock v. Napolitano*, 666 F.3d 281, 283 (4th Cir. 2012) ("In 1972, Congress amended Title VII to provide that a federal employee, who has exhausted his administrative remedies, 'may file a *civil action as provided in section 2000e–5* of this title[.]'") (emphasis in original).

civil action (1) within 90 days following the issuance of a decision by OFO, or (2) after 180 days from the date of appeal if OFO has not rendered a decision. 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. §§ 1614.407(c), 1614.407(d).

29 C.F.R. § 1614.407(e) provides employees with a third, more circuitous route to judicial review. Pursuant to Section 1614.407(e), a complainant who has appealed a final agency decision to OFO "may withdraw the appeal and file a civil action within 90 days of receipt of the agency final action."[14] *See also* 29 C.F.R. § 1614.407(g) ("A complainant … who follows the procedures described in paragraph (e) [] of this section shall be deemed to have exhausted his or her administrative remedies.").

Here, Plaintiff filed administrative complaint IRS-24-900 on July 11, 2024, which was dismissed via final agency decision on August 15, 2024. Plaintiff appealed to OFO on September 16, thereby authorizing him to file a civil action (1) within 90 days of the August 15 decision – here, November 13, 2024 – *see* § 1614.407(e); or (2) following the issuance of an OFO decision – here, February 18, 2025 – *see* § 1614.407(c).[15]

Plaintiff has succeeded in identifying an obscure and rarely used avenue for meeting the exhaustion requirement, namely § 1614.407(e), and on that basis I conclude that he has exhausted

---

[14] On June 11, 2020, the EEOC issued a final rule amending Section 1614.407 to include what is now paragraph (e). Section 1614.407(e) provides a complainant who has appealed an unfavorable agency decision to OFO a 90-day window to change his or her course of action. Rather than having to wait for the issuance of an OFO decision – or 180 days from the date of appeal – a complainant may choose to file suit in federal court so long as the civil action is commenced within 90 days of the agency decision. Once a complainant files a civil action, however, the Commission's processing of the appeal is terminated. *See* 29 C.F.R. § 1614.409 ("A Commission decision on an appeal issued after a complainant files suit in district court will not be enforceable by the Commission. If private suit is filed subsequent to the filing of an appeal and prior to a final Commission decision, the complainant should notify the Commission in writing."). Here, OFO issued a decision on February 18, 2025, affirming the dismissal of IRS-24-900, leading this Court to conclude that Plaintiff did not advise the Commission that he had filed suit.

[15] Plaintiff would also have been entitled to file a civil action 180 days after the date of his appeal provided that OFO had not rendered a decision – here, March 15, 2025. *See* 29 C.F.R. § 1614.407(d).

administrative remedies for his Title VII claims based on the allegations in IRS 24-900. Plaintiff filed his original civil complaint on November 12, 2024 – 89 days after the Commission's August 15 decision dismissing IRS-24-900.[16] Accordingly, despite appealing the Commission's decision to OFO on September 16, he has nonetheless complied with 29 C.F.R. § 1614.407(e), which permits a complainant to seek judicial review notwithstanding the filing of an appeal to OFO so long as the complainant files a civil action within 90 days of receipt of a final agency decision. And while 29 C.F.R. § 1614.409 provides that complainants "should" notify the Commission when electing this peculiar path to judicial review, I cannot conclude that failure to do so forecloses a complainant from filing a civil action.[17]

Plaintiff's Title VII claims based on the allegations in IRS-24-900 may proceed.

> 2. *Plaintiff need not exhaust administrative complaint IRS-24-1300 because the allegations in IRS-24-1300 arise out of the same core grievance as IRS-24-900.*

Plaintiff filed administrative complaint IRS-24-1300 on October 24, 2024, alleging that the IRS subjected him to harassment when the Agency (1) attempted to impose improper limitations on his access to an "On the Job Instructor"; (2) issued the Letter of Reprimand; (3) attempted to coerce Plaintiff to continue an earlier grievance; and (4) deficiently processed administrative

---

[16] Plaintiff's first civil complaint is docketed at ECF 1 and, at first glance, appears to have been filed on November 14, rendering it untimely. But this is most likely a product of a delay on the ECF platform. Indeed, the "date filed" entry at the top of the docket states that the complaint was filed on November 12. Moreover, in its Answer, Defendant acknowledges that this action was filed within 90 days of the Commission's August 15, 2024 decision. ECF 8 at ¶ 6 ("Defendant admits that Plaintiff filed this action within 90 days of the August 15, 2024 Final Agency Decision").

[17] This Court has identified only one other court that has addressed the applicability of 29 C.F.R. § 1614.407(e). *See Diakite v. Yellen*, No. 23-10470, 2024 WL 665534, at *4-5 (E.D. Mich. Feb. 16, 2024).

complaint IRS 24-900.[18] *See* ECF 17-4 at 1-2. The EEOC investigated claims one and two but dismissed claims three and four.[19] *Id.* at 2-3.

A Title VII plaintiff must "exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson*, 107 F.3d at 1020. But where a complainant experiences discrimination subsequent to the filing of an administrative complaint, the complainant need not file a new charge with the EEOC if "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *see also Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021). Where the allegations in a subsequent EEOC charge fall reasonably within the scope of the original charge, "the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints." *Id.* Put another way, a complainant need not exhaust his administrative remedies when a subsequent charge arises out of the same "core grievance" as the original complaint. *Id.* at 238; *Simko*, 992 F.3d at 209-11 (a subsequent EEOC charge that "advances the same theory of discrimination" or shares a close "factual nexus" is likely to fall within the scope of a prior charge).

---

[18] Plaintiff maintains that (a) the Final Agency decision in IRS-24-900 contained information that was misstated and fabricated; (b) he was not provided with a notice-of-intent-to-dismiss prior to being issued the decision; (c) he was not provided a copy of the Counselor's Report within 15 days of filing IRS-24-900 on July 11, 2024; and (d) he requested to amend the IRS-24-900 complaint on August 30, 2024 but the agency did not address the request and instead referred to it as a memorandum. *See* ECF 17-4 at 1-2.

[19] Claim three was dismissed as an improper collateral attack on the administrative grievance process under 29 C.F.R. § 1614.107(a)(1). ECF 17-4 at 3-4. Claim four was dismissed "for failure to state a claim/alleging dissatisfaction with the processing of a prior complaint in accordance with 29 C.F.R. §1614.107(a)(8) and for stating the same claim that is pending before or has been decided by the agency or Commission in accordance with 29 C.F.R. § 1614.107(a)(1)." *Id.* at 5. The Agency's investigation of IRS-24-1300 appears to have concluded on March 24, 2025. *See* ECF 17-6. This "breaking news" (a notice was filed *after* submission of the Motion to Dismiss and Plaintiff's Response) epitomizes the unwieldy, concurrent nature of this action, with many moving pieces at various stages of the administrative appeals process.

Here, both of Plaintiff's administrative complaints, IRS-24-900 and IRS-24-1300, relate to a common grievance – the Agency's purported retaliation in response to his refusal to comply with a renewed background investigation. The two charges arise from a similar set of facts and advance the same theory of discrimination. Plaintiff's Title VII claims based on the allegations in IRS-24-1300 are therefore fairly within the scope of IRS-24-900, with result that he need not separately exhaust IRS-24-1300.

The Agency may ultimately have a strong legal defense – that the background check Plaintiff deems retaliation is something the Agency is required to perform. But the merits are not before me, only Plaintiff's right to proceed.

### IV.   Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part and denied in part. An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge
